## GARARD ET AL. v. WEAVER ET AL.

[No. 6,528.   Filed June 11, 1908.]

1. **DEEDS.**—*Descriptions.*—*Mistakes.*—*Evidence.*—*Circumstantial.* — Mistakes in the description in a deed may be established by either direct or circumstantial evidence.   p. 114.

2. **SAME.** — *Descriptions.* — *Mistakes.*—Where the grantor and grantee measured the lands to be conveyed, marked the lines thereof and built a partition fence on the dividing line, the grantee occupying the land so set apart, the fact that the description in the deed did not correctly designate such land does not vitiate such deed; and such deed may be corrected in a suit therefor.   p. 114.

3. **NOTICE.**—*Possession.*—*Deeds.*—*Defective Descriptions.*—Actual possession of real estate held under a deed whose description is defective is notice to the world of the occupant's rights.   p. 114.

From Hancock Circuit Court; *Edward W. Felt*, Judge.

Suit by George Weaver and another against Thomas H. Holliday and others. From the decree entered, Tunis Garard and another appeal. *Affirmed.*

*L. S. Baldwin* and *William Ward Cook*, for appellants.

*Roberts & Vestal* and *Shirts & Fertig*, for appellees.

RABB, C. J.—In February, 1887, appellant Tunis Garard owned all of the southeast quarter of section twenty-three, and of the southwest quarter of section twenty-four, lying north and west of White river, in township eighteen north, range four east, in Hamilton county, Indiana, and also the lands adjoining upon the north. At that date he entered into a parol contract with Isaiah and Charlotta Applegate, by which he sold to them eighty acres out of said tract, the parties agreeing that the boundaries of the eighty acres sold should be ascertained by a survey. Pursuant to this agreement, the parties mutually employed the county surveyor to establish said lines, and he, in the presence of both the parties, made the survey and established the boundaries of the lands sold, to the mutual satisfaction of the

contracting parties, and the purchaser entered upon the possession of the tract surveyed. Afterwards said purchaser and the appellant Garard jointly erected upon the north line of said eighty acres so established by said surveyor a partition fence as the dividing line between the lands sold by said appellant to said Applegate and the lands retained by him. The north line of the eighty-acre tract referred to, so established by the surveyor and so agreed to by the parties, came within seventeen links of the line running east and west through the center of sections twenty-three and twenty-four. Afterwards appellant Garard and his wife undertook to convey the eighty acres of land thus sold to said Applegate and wife, and in the deed executed by them the land was described as follows: "All that part of the southeast quarter of section twenty-three, township eighteen, range four, west of White river, sixty acres, and all that part of the southwest quarter of section twenty-four, township eighteen, range four, west of White river, thirty-two acres, containing ninety-two acres in all, except twelve acres off the north side of said two tracts of land, hereby conveying eighty acres." By this description the parties meant and intended to convey the land sold and surveyed to and taken possession of by the Applegates. They each supposed that the description correctly described the land, and meant and intended to use the language that was contained in the deed. As a matter of fact, however, the description did not properly describe the land sold. The purchasers, Isaiah and Charlotta Applegate, and their grantees, remained in the full, open and notorious possession of the lands included within the survey before mentioned and up to within seventeen links of the half-section line, as aforesaid, claiming to be the absolute owners of the same continuously from that time until the beginning of this action. On September 7, 1901, appellant Tunis Garard conveyed by warranty deed to Michael E. Graves the northeast quarter of sec-

tion twenty-three, and the northwest quarter of sec-
tion twenty-four, lying west of White river, and twelve
acres off of the whole of the north side of the southeast
quarter of section twenty-three, and the southwest quarter
of section twenty-four, in township eighteen north, range
four east, which twelve acres last described was meant and
intended for the twelve acres excepted from the deed exe-
cuted by Tunis Garard to Isaiah and Charlotta Applegate,
as aforesaid. Said Michael E. Graves afterwards conveyed
by warranty deed the same twelve acres of land to Thomas
S. Graves, who in turn, by warranty deed, conveyed the
same to the appellees, George Weaver and Elmer W. Mas-
ters, neither of said grantees having any actual knowledge
of the true boundary lines of the ·eighty-acre tract of land
sold by appellant Tunis Garard to the said Applegates, and
surveyed off to them, as heretofore shown.

After the purchase of said land by Isaiah and Charlotta
Applegate, and the conveyance of the same to them, as here-
tofore shown, said Charlotta died, and by her will devised
all her interest in said premises to Isaiah Applegate, who
afterwards conveyed the same, by the same description as
was contained in the original deed from Garard to the Ap-
plegates, to one Holliday.

Appellees Weaver and Masters brought this suit against
appellees Holliday and Graves for possession and to quiet
their title to the twelve acres mentioned in the several deeds'
of conveyance referred to. Appellee Holliday answered
the complaint by a general denial, and filed a cross-com-
plaint setting up the facts heretofore set forth regarding
the purchase and sale of said eighty acres of land, the ascer-
tainment of the boundaries of the same, the possession and
occupancy thereof, the execution of the deed from Garard
and wife to Isaiah and Charlotta Applegate, the succession
by him to their title, averring that a mistake was made in
the description of the lands intended to be conveyed in the
aforesaid deed, claiming title to all of said twelve acres ex-

cept seventeen links off of the north side thereof, and asking for a correction of the deed and a decree quieting his title to the land, making the plaintiffs in the original suit, appellants Garard and wife, and numerous other persons, parties defendant to the suit. Appellees Weaver, Masters and Graves and the Garards answered the cross-complaint by a general denial. All the other defendants filed disclaimers. The cause was submitted to the court for trial, a special finding of facts rendered, and conclusions of law stated thereon, to which conclusions of law appellant Tunis Garard excepted. Appellants' motion for a new trial was overruled and decree entered in favor of appellee Holliday and against appellees Weaver and Masters upon the complaint, and in favor of Holliday against all the defendants to the cross-complaint, quieting his title to the premises in dispute. From this decree Tunis and Frances Garard alone appeal.

The errors relied upon for a reversal, as we understand appellants' contention, are that the evidence is insufficient to sustain the finding of the court, and the finding is insufficient to support the conclusions of law; that the evidence fails to support the averment of the second paragraph of the cross-complaint and of the finding of the court that there was a mutual mistake made in the description of the premises intended to be conveyed by the deed from Garard and wife to the Applegates. The special findings of the court set forth the facts as they have already been narrated.

The evidence clearly shows, and there is no dispute about it, that appellant Garard sold to the Applegates eighty acres of land off of·his land lying north and west of White river in quarter sections twenty-three and twenty-four, described in the pleadings. At the time the sale was made the boundaries of the land were not fixed. They were to be ascertained by a survey afterwards to be made. This survey was made; and the north boundary line established to

the evident satisfaction of both parties. They jointly erected a fence upon it, and Garard delivered, and the Applegates took, possession of the premises within the boundaries of the survey. Garard and wife afterwards undertook to convey the land sold. The deed had no other purpose than to convey the land that had been sold and possession delivered to the Applegates. It is quite apparent that none of the parties knew the exact location of the north line of the eighty-acre tract with reference to the half-section line. It was not surveyed with reference to the half-section line. The evidence shows that they commenced the survey on the banks of White river, and surveyed north for the purpose of taking in a scope that would include eighty acres, and they meant and intended by the description contained in the deed to describe that particular land. They evidently were mistaken as to the proximity of the north line of the land surveyed to the half-section line.

The fact that there was a mistake made in the description contained in the deed can be established by circumstances as well as by direct proof, and the circumstances disclosed by the evidence in this case leave no room to doubt that the grantors, Tunis Garard and wife, meant and intended to convey, and the grantees, Isaiah and Charlotta Applegate, meant and intended to accept the identical lands that were sold to them by Garard, and none other. There is no room to doubt that what they believed at the time the deed was executed was that said conveyance did correctly describe the premises included within the boundaries of the survey. Such being the undoubted meaning and intention of the parties, and the grantees being in the actual possession of the premises during all the time, the whole world was bound to take notice of their rights. The subsequent purchasers, Michael E. and Thomas Graves, Weaver and Masters, would be bound to take notice of the right under which they held possession, and could not be-

come *bona fide* purchasers of the property, even if they were here in this court insisting that they were entitled to hold the property as against the appellee. *Noyes* v. *Hall* (1877), 97 U. S. 34, 24 L. Ed. 909; *Barnes* v. *Union School Tp.* (1883), 91 Ind. 301; *Dyer* v. *Eldridge* (1894), 136 Ind. 654; *Warbritton* v. *Demorett* (1891), 129 Ind. 346.

The decree of the court below was clearly right upon the evidence in the case, and no objections are pointed out to the pleading.

The decree is in all things affirmed.

Roby, J., absent.