PONCA CITY BLDG. & LOAN CO. v. GRAFF et al.

No. 29751.     Sept. 30, 1941.

*117 P. 2d 514.*

Oron S. Ellifrit, of Ponca City, and Eugene Rust and Gavin & Barnes, all of Tulsa, for plaintiff in error.

Bailey E. Bell and Ed Crossland, both of Tulsa, for defendants in error.

ARNOLD, J. This is an appeal from the district court of Tulsa county.

On the 23rd day of May, 1928, the defendants, Maude E. Graff and Bennett Graff, executed a note in the sum of $11,000, bearing interest at the rate of 7.8 per cent per annum, in favor of the Ponca City Building & Loan Associa-tion. On the same date the defendants executed and delivered to plaintiff a real estate mortgage covering the property involved in this action to secure such promissory note. This was a regular building and loan contract providing for monthly principal payments which were to be used to purchase stock in said company, and when there had accumulated a sufficient sum, or $11,000, said stock should be used to cancel and pay said note and mortgage.

On October 3, 1931, a renewal note was executed by the defendants in the sum of $9,050; said sum being the balance due after the amount of stock so purchased was applied on the loan. This note provided that said loan should be reduced monthly by the amount of each principal payment made. It also provided an interest rate of 10 per cent. The renewal note, as well as the loan agreement, provided that the mortgage lien above referred to should be continued in full force and effect until the entire indebtedness was paid.

On or about August 16, 1932, the plaintiff brought suit for the amount due on said renewal note, together with interest thereon at the rate of 10 per cent per annum and the attorney's fee specified in said renewal note, and sought to foreclose said mortgage and have the property sold after appraisement thereof; thereafter, on November 10, 1932, default judgment was entered against the defendants, Maude E. Graff and Bennett Graff, in the full amount prayed for, together with a judgment ordering the sale of said property; the plaintiff purchased the property at the sheriff's sale and went into possession thereof about January 11, 1933.

On June 23, 1933, the defendant Maude E. Graff filed a petition to vacate the judgment above referred to; nearly four years thereafter, to wit, January 21, 1937, a judgment was entered vacating said judgment and ordering all proceedings had thereunder, and the sheriff's sale conveying said property to the plaintiff, set aside. The plaintiff was granted leave to file an amended petition and caused summons to be is-

sued to the defendants. The journal entry of judgment was not filed until June 21, 1938. On the same day the plaintiff filed its amended petition seeking to foreclose its mortgage. The allegations in the amended petition are the same as were set forth in the original petition, except that in addition thereto it alleges that the plaintiff went into possession of said property on January 11, 1933, and now holds possession thereof as a mortgagee in possession, and that the defendants are entitled to credit for only the net rentals received by the plaintiff in the operation of the property; also, plaintiff sought judgment for a straight interest at 10 per cent, as provided in the renewal note, from March 1, 1932, on the balance due on said note. The defendant Maude E. Graff answered by way of general denial, and in addition thereto alleged full payment by reason of the rents collected by the plaintiff in excess of the total amount due, including interest. The defendant also cross-petitioned for damages for wrongful detention of said property, for rents collected, and for negligent care and mismanagement of the property; and also for the value of the use of defendant's furniture taken by the plaintiff, but not covered by the mortgage. The defendant Bennett Graff also answered by way of general denial and cross-petitioned for certain damages by reason of his loss of possession of the property which was his homestead. Trial was had before a jury and resulted in a judgment finding all the issues for the defendants and fixed the amount of their recovery at $3,766. From this judgment, the plaintiff appealed.

The record discloses that the plaintiff took possession of the property immediately upon the execution and delivery of the sheriff's deed. When the court found that the judgment and sale were void and set the same aside, the possession of the plaintiff became that of mortgagee in possession. Harding v. Gillett, 25 Okla. 199, 107 P. 665; Page v. Turk, 43 Okla. 667, 143 P. 1047. The **plaintiff**, being a mortgagee in possession, was entitled to remain in posses-

sion until payment of the debt or until it proceeded to the conclusion of the case by a new judgment and foreclosure sale. Webb v. Semans, 110 Okla. 72, 235 P. 1074.

This it attempted to do; it filed the amended petition hereinbefore referred to seeking a new judgment and foreclosure sale. The defendants answered as indicated above. Under the rule announced in Brown v. State National Bank of Shawnee, 167 Okla. 366, 29 P. 2d 955, the defendants could not maintain an action in ejectment to quiet title or for rents and profits against the plaintiff, mortgagee in possession, without first tendering payment of the mortgage debt. However, as in this case, where the plaintiff proceeds by the filing of an amended petition seeking a new judgment and foreclosure sale, the defendants are entitled to an adjustment of all equities between the parties; and may demand an accounting of all rents and profits; and may cross-petition for damages for waste and wrongful conversion of personal property committed by the mortgagee in possession. Gillett v. Romig, 17 Okla. 324, 87 P. 325; Romig v. Gillett, 187 U. S. 111, 23 S. Ct. 40, 47 L. Ed. 97; Webb v. Semans, supra; Felino v. K. S. Newcomb Lumber Co., 64 Neb. 335, 89 N. W. 755, 97 A. S. R. 646; Whiting v. Adam, 66 Vt. 679, 30 A. 32, 25 L.R.A. 598, 44 A.S. R. 875; Beindorf v. Thorpe, 126 Okla. 157, 259 P. 242, 55 A. L. R. 1014; Conner v. Smith, 88 Ala. 300, 7 So. 150; Onderdonk v. Gray, 19 N. J. Eq. 65. The contention made by plaintiff that the defendants cannot maintain a cross-petition for possession to quiet title or for damages after breach of condition without first offering to redeem and tendering payment of the mortgage debt is untenable.

The record discloses that the renewal note in question, in the amount of $9,050, was executed and delivered by the defendants on the 3rd day of October, 1931 (the original note was executed May 23, 1928); that such amount was the balance due on the mortgage debt to the plaintiff as disclosed by its rec-

ord after crediting same with the amount paid on the installment stock certificate. The trial court, over a general objection by the plaintiff, admitted evidence as to certain transactions and payments made prior to the execution of such renewal note for which the defendants claim that credit should have been given. In this connection the defendants introduced evidence as to all monthly payments made by them before the renewal note was executed. They claim credit for all such monthly payments. They also introduced evidence concerning the payment of $350 to the contractors and $857 to the building and loan company at the time the building was completed and before the key thereto and possession thereof were delivered to them by the building and loan company. They say that these two checks were required of them before the building and loan company would give possession. In this connection, they also claim that the building and loan company had guaranteed to them that the entire cost of the building in question and expense of whatsoever nature in connection therewith would not exceed the amount of the original loan, to wit, $11,000. They contend that these payments made by said checks were in excess of the loan, and therefore they were entitled to credit therefor.

Where one gives a note in renewal of another note with the knowledge at the time of a partial failure of consideration for the original note, or false representations by the payee, he waives such defense and cannot set it up to defeat a recovery on the renewal note. And where one giving such a note either had knowledge of such facts and circumstances, or by the exercise of ordinary diligence could have discovered them and ascertained his rights, it becomes his duty to make such inquiry and investigation before executing a renewal note; and if he fails to do so, he is as much bound as if he had actual knowledge. Remund v. Liberty National Bank of Weatherford, 168 Okla. 580, 35 P. 2d 457; Tudor v. American Investment Co. of Enid, 163 Okla. 274, 21 P. 2d 1056.

As to these two checks, the defendant Bennett Graff, who issued the checks, testified in substance that he was required by the building and loan company to issue the checks and deliver them to it in payment of "just a bill he handed me for $857"; that he made no inquiry as to what items the bill covered; whether or not it was for principal, interest, or for extras. He said that all he knew about it was that they handed him the bill and said he would have to pay it before he could get the key to the building; that he made no further inquiry about what these payments were for. The defendant's testimony does not disclose that any inquiry was ever made thereafter as to whether or not credit had been made on the original note for these amounts. There were many monthly installment payments made thereafter, and before the execution of the renewal note in question, and Graff made six monthly payments as provided in the renewal note. In this connection the plaintiff's testimony is to the general effect that it rendered to the defendant Bennett Graff an itemized statement, which is disclosed by the record, showing just exactly why the two checks were required of him. It contends that the defendants had full knowledge of all the transactions regarding these checks at the time the checks were delivered. This itemized statement in the record bears a date previous to the date the checks were issued and the date defendant Bennett Graff says they were delivered.

We hold, under the facts in this case, that the defendants either had full knowledge of the facts and circumstances surrounding and preceding the execution of the renewal note now complained of, or by the exercise of reasonable diligence they could have ascertained the facts and know their rights; that it was their duty to do so before executing the renewal note. By their action they have waived such defense to the renewal note. The amount due on the renewal note, therefore, is the amount thereof less such payments made and credits accruing thereon after its execution.

With reference to the admission of testimony regarding these two checks and the circumstances surrounding said payments, the defendants contend that there was no proper objection made to said testimony. There was a general objection made to the introduction of the checks on the ground that they were incompetent, irrelevant, and immaterial and that they did not tend to prove or disprove any of the issues in this case. We having held that the defendants either knew or should have known all the facts and circumstances occurring before the execution of the renewal note, and that, therefore, the defendants had no defense thereto based on such alleged overpayments on the original note, all of the testimony regarding the two checks above mentioned and monthly payments made in accordance with the terms of the original note was wholly incompetent, irrelevant, and immaterial to the actual issues in this case as regards the plaintiff's claim. This suit is based entirely upon the renewal note. There was no contest about the validity of said note. The only contest regarding it is the amount paid thereon and amounts paid before the execution thereof and not credited thereon. The credits contended for by the defendants before the execution of said renewal note not being allowable, it is obvious that a general objection was entirely sufficient to direct the court's attention to the incompetency of such testimony. The purpose of an objection in a trial is to call the court's attention to errors being committed so that the court, as well as the opposing party, will be advised and have an opportunity to correct them. Such objections are not for the purpose of laying a predicate for a reversal of the judgment on appeal if the same should be unfavorable. The trial court should have sustained the objection to this character of testimony. It was reversible error not to do this. The defendants cite and rely on Skinner v. Bowlan, 181 Okla. 544, 75 P. 2d 181. In that case we held that section 291, O. S. 1931, 12 Okla. Stat. Ann. § 424, does not apply to general objections made to the introduction of documents as applied to the facts in that case. Therein the note was offered in evidence and a general objection was made to the admission thereof; such objection was overruled and the note admitted. The facts disclose that the taxes on said note had not been paid. It is obvious that had a specific objection been made, calling the trial court's attention to the fact that the taxes had not been paid, the court could have required that the taxes be paid before admitting same. In other words, had a specific objection been made, the trial court could have required that the taxes be paid and on the payment of such taxes the note could have been properly admitted in evidence. Under such a state of facts, certainly a general objection was insufficient. In the instant case, however, the checks introduced disclosed on their face the date thereof. It was apparent that all of such checks, with the exception of six, the face of which disclosed that they were dated and paid after the execution of the renewal note, were inadmissible, and could in no way be made admissible, and that no casting around by the court or opposing counsel for grounds of exclusion was necessary. In McDonald v. Strawn, 78 Okla. 271, 190 P. 558, we held as follows:

"If it is apparent that the general objection, to wit, 'Objected to', could not have been obviated, and that the evidence is clearly inadmissible for any purpose, this court, more as a favor than as the recognition of a right, may notice it, and will do so when it clearly appears the evidence admitted was highly prejudicial."

This rule is applicable here.

The court instructed the jury to compute interest at the rate of 7.8 per cent per annum from the date of "the execution of the note and mortgage." The original note and mortgage provided interest at the rate of 7.8 per cent per annum. When the renewal note was given a new mortgage was not executed. The renewal note, however, provided 10 per cent interest. It is obvious that the court in instructing the jury had in mind and was referring to the

original note and mortgage. This suit is based upon the renewal note supported by the original mortgage. Nobody contends that the renewal note and the original mortgage, given as security for the loan in this case, are invalid for any reason, and we find nothing in this record that would be indicative of the invalidity of either the renewal note or the mortgage securing same. The court, therefore, erroneously instructed the jury as to not only the rate of interest but the duration of the obligation, both of which materially affect the amount of the obligation. When the renewal note was executed, the mutual obligations of the parties were settled and merged therein. The interest, therefore, that accrued would necessarily be measured by the rate provided in the renewal note, and would not begin to accrue until its date of execution, which was October 3, 1931, nearly four years after the execution of the original note.

The judgment in favor of the defendants having been reversed, the judgment for attorney's fee in favor of the attorneys for the defendants cannot stand. No attorney's fee may be allowed the attorney for the defendant unless the final judgment be against the mortgagee who is claiming a lien. Oklahoma Farm Mortgage Co. v. Cesar, 178 Okla. 451, 62 P. 2d 1269. Section 11021, O. S. 1931, 42 Okla. St. Ann. § 176, will govern in this regard when the case is retried.

For the reasons given, this case must be remanded for retrial. It is unnecessary to pass upon the other questions raised by the plaintiff in error.

This cause is reversed and remanded, with directions to the trial court to proceed in conformity with the views herein expressed.

CORN, V. C. J., and RILEY, OSBORN, BAYLESS, GIBSON, HURST, and DAVISON, JJ., concur. WELCH, C. J., absent.